# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| Oral Damocles, Justin Haller, Brett Halliday, Kristen Jantz, and Rocco Russo, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>Mitsubishi Motors North America, Inc.,<br><br>Defendant. | Civil Case Number: _____<br><br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT

For this Class Action Complaint, Plaintiffs Oral Damocles, Justin Haller, Brett Halliday, Kristen Jantz, and Rocco Russo, by and through undersigned counsel, pleading on their own behalf and on behalf of all others similarly situated, state as follows:

## INTRODUCTION

1.     Plaintiffs, Oral Damocles, Justin Haller, Brett Halliday, Kristen Jantz, and Rocco Russo ("Plaintiffs"), bring this lawsuit on behalf of themselves and a proposed class of past and present owners and lessees of defective 2022 Mitsubishi Outlander vehicles (collectively, the "Class Vehicles") marketed, distributed, sold, warranted, and serviced by Defendant Mitsubishi Motors North America, Inc. ("Mitsubishi" or "Defendant").

2.     Plaintiffs and the Class were damaged because the Class Vehicles contain defective hoods that flutter and bounce when driving.

3.     At all relevant times, Mitsubishi knew that the Class Vehicles contain one or more design and/or manufacturing defects that can cause the hoods to flutter and bounce when driving (the "Hood Defect" or the "Defect").

4.     In March 2021, almost immediately after Mitsubishi began selling the Class Vehicles and before any of the Plaintiffs purchased or leased their vehicles, Mitsubishi had already performed an investigation into the Hood Defect and notified its dealerships, but not Class Vehicle owners, that "[a] hood flutter may occur on 2022 Outlanders."

5.     Since at least July 2021 Class Vehicle owners have reported that their hoods flutter when driving at various speeds, in windy conditions, or when driving over bumps. *See, e.g.*:

- NHTSA Complaint, July 21, 2021, ID No. 11421741: "I just bought a 2022 Mitsubishi Outlander and I noticed while driving on the highway around 60 to 70 MPH the hood is fluttering. I checked the hood just to make sure it was not unlatched and it was secured but the hood continues to flutter looking like it wants to open during highway driving."

- NHTSA Complaint, July 31, 2021, ID No. 11427249: "The front hood is structurally weak, causing flexing, bouncing, and fluttering. When driving over 55 mph, you feel as though the hood is going to open up while driving. It is a very unsettling and unsafe feeling when driving on the highway. You feel as though the hood is going to open up and smash against the windshield. When driving on surface streets where there are bumps in the road, the hood moves a lot."

- NHTSA Complaint, August 23, 2021, ID No. 11430174: "At 45mph and above the hood flutters violently."

- NHTSA Complaint, August 23, 2021, ID No. 11430120: "I have taken my SUV for to updates in regaurds to repairing the hood that shakes and bounces. It moves up and down when going down the road fast or slow. Its not only the wind that causes this it is also bumps in the road. It oftem seams the hood will fly up and can be pretty scarry. I fewel something needs to be done to help support the hood and make it samefer. If it keeps moving metal fatigue could occure and cause a safety issue that could lead to a death." [All typos in original.]

- NHTSA Complaint, September 7, 2021, ID No. 11431960: My 2022 Mitsubishi Outlander hood vibrates during drives. The vibration starts when the car is moving around 35 - 40 mph or more. I confirmed that it was properly closed, but it concerns me because this repetitive movement may loosen the hood locking system during any future drive. This problem may cause a potentially fatal accident.

6.      The Hood Defect can, and often does, manifest immediately after Class Members take ownership of the vehicles. Plaintiffs each report experiencing the hood flutter shortly after purchasing or leasing their vehicles, and in some instances have complained to dealers within days of receiving the vehicle. Other owners likewise complained that they experienced the Hood Defect ever since they purchased their vehicles:

- NHTSA Complaint, November 26, 2021, ID No. 11441422: The vehicles hood shakes and flutters when traveling above approximately 45mph and gets worse the faster vehicle travels. I fear this is causing excess wear on the hood latch and the hood will eventually fly up causing driver to be unable to see. **Been like this since new**. Has been back go dealership twice with no fix. [Sic]

- NHTSA Complaint, January 3, 2022, ID No. 11445965: I purchased this vehicle on 12/24/2021. **After purchasing and driving off the lot, I noticed a significant amount of hood fluttering**. Irrespective of the speed , the flutter is significant and a distraction and can affect one driving safely.

- NHTSA Complaint, January 3, 2022, ID No. 11445964: I purchased this vehicle on 12/24/2021. Today 01/03/2022 I was taking it to the dealership for a very **severe case of the hood fluttering** and my forward collision warning came on for no reason and began flashing and I got the message that the system is off.

- NHTSA Complaint, January 14, 2022, ID No. 11447520: My vehicle hood is shaking/fluttering as if it is not latched properly. I am concerned this may fly up and cause an accident. **I have had my vehicle less than a month**.

7.      Defendant admitted the existence of the Hood Defect as soon as the Class Vehicles went on sale, and issued multiple Technical Service Bulletins to its dealerships directing its dealerships to perform various modifications and repairs to the hood in an attempt to correct the Defect. However, each of these measures has failed to remedy the Hood Defect in the Class Vehicles.

8.      Moreover, since late 2021, Mitsubishi has directed its dealers to replace certain Class Vehicles hoods with modified replacement hoods, but these efforts have likewise failed to

cure the defect because (1) Mitsubishi does not have enough replacement hoods available, and thus Class Vehicle owners report that they have to wait months or longer for replacement hoods while their vehicles remain unrepaired, and (2) those owners who have received the replacement hoods report that their vehicles continued to experience the hood flutter thereafter.

9.     Aside from not curing the hood flutter, the replacement hoods do not even match the color of the rest of vehicle.  Indeed, Mitsubishi dealers have third party body shops paint the replacement hoods and warn customers that the replacement hoods "may not match your paint exactly."[1]  As a result, those Class Vehicle owners who have been given replacement hoods have been required to sign paperwork agreeing that their replacement hood may be a different color, and the vehicle's value may decrease as a result.  One Class Vehicle owner complained on March 31, 2022, "I signed a paper at dealership stating that after the hood replacement my cars value might go down because of the painting that would be done outside of the factory."[2][Sic]  Another Class Vehicle owner was required to sign a "Hood Flutter Repair Disclosure" form prior to getting a replacement hood that stated, *inter alia,* that they "understand . . .  an 'exact' [color] match may not be possible" and the replacement hood may "require the fenders to be blended to better match the new paint."

10.     The Hood Defect poses a safety hazard to drivers because the bouncing and fluttering of the hood causes the drivers to be distracted.  Further, the drivers are concerned that the hood may be getting unlatched and may open at any moment, and thus, the drivers' attention is drawn to the Defect, and away from  other members of the motoring public, and/or pedestrians.

---

[1] https://www.facebook.com/groups/865252344420006/permalink/993881648223741/

[2]
https://www.facebook.com/groups/865252344420006/posts/1012886209656618/?comment_id=1013017239643515

For example, the following owners complained to the NHTSA that the Hood Defect causes them to be distracted, scared, and feeling unsafe:

- NHTSA Complaint, October 21, 2021, ID No. 11437717: The contact owns a 2022 Mitsubishi Outlander. The contact stated while driving approximately 45 MPH, the hood started to vibrate abnormally. **The contact was concerned that the hood would open inadvertently**. The vehicle was taken to a local dealer and was diagnosed with needing weather-stripping to be replaced. The vehicle was not repaired. The manufacturer was not informed of the failure. The failure mileage was approximately 8.

- NHTSA Complaint, October 29, 2021, ID No. 11438620: At higher highway speeds the hood gets air under it, causing the hood to "flutter" or "bounce". At higher speeds it looks like the hood could almost fly up. **I feel very unsafe driving with this**, i've been told it can't make my hood fly up, but i worry about it everytime i drive. [Sic]

- NHTSA Complaint, November 2, 2021, ID No. 11439003: CAR ENGINE HOOD SHAKES VIOLENTLY AT SPEEDS HIGHER THAN 45 MILES PER HOUR. THE HIGHER THE SPEEND THE MORE IT SHAKES. **MY WIFE IS AFRAID TO DRIVE IT**. MANY OTHER OWNERS ARE COMPLAINING OF SAME ISSUE AND HAVE TAKEN OUTLANDER IN FOR SERVICE WITHOUT FAVORORABLE RESULTS. ISSUE STILL PERSISTS. I WILL TAKE MY OUTLANDER FOR SERVICE AS SOON AS I AM ABLE.

- NHTSA Complaint, December 3, 2021, ID No. 11442597: When driving on highway you the hood of the car fluttering and vibrating. **It is very scary** and I always feel like the hood is coming off. [Sic]

- NHTSA Complaint, January 31, 2022, ID No. 11449500: Upon purchasing a BRAND new 2022 vehicle you expect the vehicle to be in great shape with no cosmetic issues nor issues under the hood well that wasn't the case for me. I test drove the vehicle locally and it was fine. After a couple weeks I needed to drive on I95 and when I got up close to 60MPH THE HOOD STARTED FLUTTERING LIKE IT WAS ABOUT TO BLOW OFF! **I was freaking out and swerved because I was watching the hood praying f it wouldn't fly off!** My kids were in the vehicle with me as well. I called and spoke with Mitsubishi and they offered a temporary sealant that "could" stop the fluttering. It didn't! I contacted them immediately and informed them this has to be replaced or fixed correctly! I've been going back and forth with the dealer and WellsFargo to cancel the loan and get my money back! The dealer told me several times since 2021 November that the

5

manufacturer should have a new hood within one month and it's about to February and it still isn't fixed! [Sic]

- NHTSA Complaint, February 13, 2022, ID No. 11451757: The Hood Flutters violently while driving **making it a constant distraction with the fear that the hood will come loose and strike the windshield or fly off while driving**

11.    Had Plaintiffs and the Class Members known about the Hood Defect, they would not have purchased the Class Vehicles, or would have paid substantially less for them.

12.    Despite being notified of the Hood Defect from, among other things, pre-production testing, numerous consumer complaints (complaints made directly to Mitsubishi and its dealers as well as to NHTSA and on Mitsubishi enthusiast websites), warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Hood Defect, and has not offered to all of its customers a suitable repair or non-defective replacement hood.

13.    Mitsubishi knew of and concealed the Hood Defect that is contained in every Class Vehicle, along with the attendant safety problems, from Plaintiffs and the other Class Members both at the time of sale and repair, and thereafter.

14.    As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

15.    Plaintiffs have given Mitsubishi a reasonable opportunity to cure the Hood Defect, but Mitsubishi has been unable to do so within a reasonable time.

16.    Mitsubishi's conduct constitutes fraudulent concealment and is in violation of the Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, et seq., the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, et seq., the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68, N.Y. Gen. Bus. Law § 349, and the Texas Deceptive Practices

6

Act, Tex. Bus. & Com. Code § 17.41, et seq., and constitutes a breach of express and implied warranties and the Magnuson-Moss Warranty Act.

17.     Mitsubishi has and will continue to benefit from its unlawful conduct – by selling more vehicles, at a higher price, and avoiding warranty obligations – while consumers are harmed at the point of sale as their vehicles continue to suffer from the unremedied Hood Defect.

18.     To remedy Mitsubishi's unlawful conduct, Plaintiffs, on behalf of the proposed class members, seek damages and restitution from Mitsubishi, as well as notification to class members about the defect.

## PARTIES

19.     Plaintiff Oral Damocles ("Mr. Damocles" or "Plaintiff Damocles"), is an adult individual residing in Naperville, Illinois.

20.     Plaintiff Justin Haller ("Mr. Haller" or "Plaintiff Haller") is an adult individual residing in Star Prairie, Wisconsin.

21.     Plaintiff Brett Halliday ("Mr. Halliday" or "Plaintiff Halliday"), is an adult individual residing in Central Square, New York.

22.     Plaintiff Kristen Jantz ("Ms. Jantz" or "Plaintiff Jantz") is an adult individual residing in Watauga, Texas.

23.     Plaintiff Rocco Russo ("Mr. Russo" or "Plaintiff Russo") is an adult individual residing in Lakeland, Florida.

24.     Defendant Mitsubishi Motors North America, Inc. is a Tennessee corporation with a principal place of business at 4031 Aspen Grove Drive, Franklin, Tennessee 37067.

25.     Defendant Mitsubishi Motors North America, Inc., through its various entities, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles,

7

including the Class Vehicles, nationwide. Defendant Mitsubishi Motors North America, Inc., is the warrantor and distributor of the Class Vehicles in the United States.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and Class Members, and Mitsubishi are citizens of different states.

27.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs present a claim under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. As to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

28.     Personal jurisdiction and venue are proper in this District as Mitsubishi's principal place of business is located within this District.

29.     Mitsubishi distributes the defective vehicles in this judicial District, and receives substantial compensation and profits from the sale and lease of the defective vehicles in this judicial District, and it has and continues to conceal and make material omissions in this judicial District, so as to subject it to personal jurisdiction in this judicial District.

8

<u>**FACTUAL ALLEGTIONS APPLICABLE TO INDIVIDUAL PLAINTIFFS**</u>

**I.  Oral Damocles**

30.     On February 17, 2022, Mr. Damocles purchased a new 2022 Mitsubishi Outlander, Vehicle Identification Number JA4J4TA85NZ035239 (the "Damocles Vehicle") from Max Madsen Aurora Mitsubishi ("Madsen"), an authorized Mitsubishi dealership located in Aurora, Illinois.

31.     Prior to the sale, Madsen assured Mr. Damocles that the Damocles Vehicle was accompanied by Mitsubishi's New Vehicle Limited Warranty.[3]

32.     Almost immediately after taking delivery of the Damocles Vehicle, the vehicle began suffering from the Hood Defect, and whenever Mr. Damocles drove the vehicle faster than 50 mph, the hood fluttered.

33.     In March 2022, Mr. Damocles contacted Mitsubishi directly regarding the Hood Defect, and in response, Mitsubishi directed Mr. Damocles to present his vehicle to a dealer.

34.     Thereafter, in March 2022, Mr. Damocles presented his vehicle to Madsen and complained that his vehicle was experiencing the hood flutter.

35.     In response, Madsen confirmed that it was aware of the Hood Defect notwithstanding that it never mentioned the issue to Mr. Damocles prior to or at the time of the vehicle purchase. The dealer then advised Mr. Damocles that based on its manufacture date, the

---

[3]   A copy of the New Vehicle Limited Warranty is available at https://www.mitsubishicars.com/content/dam/mitsubishi-motors-us/images/siteimages/pdf/what-drives-us/warranty/2022-Mitsubishi-Warranty-Outlander.pdf (last visited May 18, 2022).  The warranty provides, *inter alia,* that "all parts of this Vehicle supplied by [Mitsubishi] (except batteries, adjustments required as a result of a manufacturing deficiency, air conditioner refrigerant charge, tires and items listed under the headings 'OTHERS' and 'WHAT IS NOT COVERED') are free from defects in materials or workmanship at the time of delivery. If such a defect in materials or workmanship appears during the first 5 years or 60,000 odometer miles, whichever occurs first, the part will be repaired or replaced by any Authorized Mitsubishi Motors Dealer or Authorized Service Center, using new or remanufactured Authorized Mitsubishi Motors parts."

9

Damocles Vehicle already has the modified hood, and there were no additional repairs the dealer could perform on the Damocles Vehicle regarding the hood flutter even though the hood continued to flutter.

36.     As a result of the Damocles Vehicle's un-repaired hood flutter, Mr. Damocles avoids driving the Damocles vehicle at highway speeds.

37.     The Damocles Vehicle continues to suffer from the Hood Defect.

38.     On April 18, 2022, Mr. Damocles, through his counsel, sent a letter to Mitsubishi advising that the Damocles Vehicle suffered from the Hood Defect, and still had not been repaired despite Mr. Damocles providing Mitsubishi a reasonable opportunity to cure the Hood Defect.

39.     At all times, Mr. Damocles has driven his vehicle in a foreseeable manner, and in the manner in which it was intended to be used, notwithstanding the avoidance of highway speeds.

**II.     Justin Haller**

40.     On June 17, 2021, Mr. Haller purchased a new 2022 Mitsubishi Outlander, Vehicle Identification Number JA4J4VA81NZ007837 (the "Haller Vehicle") from Inver Grove Mitsubishi ("Inver Grove"), an authorized Mitsubishi dealership located in Inver Grove, Minnesota.

41.     Prior to the sale, the selling dealership assured Mr. Haller that the vehicle was accompanied by Mitsubishi's New Vehicle Limited Warranty.

42.     Shortly after purchase, Mr. Haller, and his wife began noticing that the Haller Vehicle's hood fluttered, suffering from the Hood Defect.

43.     On July 9, 2021, Mr. Haller presented the Haller Vehicle to Inver Grove, complained about the hood flutter, and sought a repair. In response, Inver Grove attempted a repair by replacing the weather strips. However, the Haller Vehicle's hood continued to flutter thereafter.

10

44.     On February 18, 2022, Mr. Haller presented the Haller Vehicle to White Bear Mitsubishi ("White Bear"), an authorized Mitsubishi dealership located in White Bear Lake, Minnesota. Mr. Haller complained to White Bear that the Haller Vehicle continued to experience hood flutter. In response, the dealer observed the vehicle already had updated weather stripping and an adjusted latch, and then determined it was eligible for a new hood.

45.     On April 6, 2022, White Bear sent the Haller Vehicle to Heppner's Auto Body ("Heppner's"), a third party auto body shop located in Inver Grove Heights, Minnesota, and directed Heppner's to replace the Haller Vehicle's hood. However, following the hood replacement the Haller Vehicle continued to experience hood flutter and shaking.

46.     On April 19, 2022, Mr. Haller, through his counsel, sent a letter to Mitsubishi advising that the Haller Vehicle suffered from the Hood Defect despite the prior repair attempts.

47.     On April 26, 2022, Mr. Haller complained to White Bear that the Haller Vehicle's hood still fluttered. Thereafter, the vehicle was taken to Heppner's who re-installed the weather stripping on the replacement hood. However, the Haller Vehicle continues to experience the hood flutter.

48.     On May 11, 2022, a Mitsubishi district service representative inspected the Haller Vehicle and confirmed it continues to experience hood flutter.

49.     At all times, Mr. Haller has driven his vehicle in a foreseeable manner, and in the manner in which it was intended to be used.

**III.     Brett Halliday**

50.     On May 14, 2021, Mr. Halliday purchased a new 2022 Mitsubishi Outlander, Vehicle Identification Number JA4J4UA88NZ005299 (the "Halliday Vehicle") from Driver's Village, an authorized Mitsubishi dealership located in Cicero, New York.

51.     Prior to the sale, the selling dealership assured Mr. Halliday that the vehicle was accompanied by Mitsubishi's New Vehicle Limited Warranty.

52.     The day that Mr. Halliday took possession of the Halliday Vehicle, he and his wife immediately began noticing that the Halliday Vehicle's hood fluttered and that it suffered from the Hood Defect.

53.     The Defect caused Mr. Halliday and his wife to feel unsafe, and concerned about whether the hood would become unlatched and fly open when driving, and was a distraction whenever he drove his car.

54.     Thereafter, Mr. Halliday presented his vehicle to Driver's Village and complained about the Hood Defect on or about August 23, 2021, November 22, 2021, and December 31, 2021. On each occasion, Mr. Halliday was told that there were no available repairs regarding the hood flutter.

55.     On March 1, 2022, Mr. Halliday's counsel sent a letter to Mitsubishi advising that the Halliday Vehicle suffered from the Hood Defect, and still had not been repaired despite prior complaints and Mitsubishi's reasonable opportunity for repair.

56.     On March 21, 2022, Mr. Halliday presented the Halliday Vehicle to Driver's Village and complained about the Hood Defect.  In response, Driver's Village replaced the Halliday Vehicle's hood, and sent the vehicle to a third party body shop to complete the repair pursuant to TSB-21-42A-011REV.

57.     On March 29, 2022, Driver's Village returned the Halliday Vehicle to Mr. Halliday. Driver's Village advised Mr. Halliday that Mitsubishi specifically contacted the dealership and advised it to replace the Halliday Vehicle's hood because it had received the March 1, 2022, demand letter from counsel.

58.     However, the Halliday Vehicle's hood has continued to flutter following the hood replacement. Further, within days of the hood replacement, the Halliday Vehicle's windshield cracked.

59.     Thereafter, Mr. Halliday has complained to Driver's Village that the Halliday Vehicle continues to experience hood flutter, however, the dealership contends that the flutter is purportedly "normal." The vehicle still suffers from the Hood Defect.

60.     At all times, Mr. Halliday has driven his vehicle in a foreseeable manner, and in the manner in which it was intended to be used.

## IV.     Kristen Jantz

61.     On March 19, 2022, Ms. Jantz purchased a new 2022 Mitsubishi Outlander, Vehicle Identification Number JA4J4UA8XNZ063768 (the "Jantz Vehicle") from Hurst Autoplex Mitsubishi ("Hurst"), an authorized Mitsubishi dealership located in Hurst, Texas.

62.     Prior to the sale, the selling dealership assured Ms. Jantz that the vehicle was accompanied by Mitsubishi's New Vehicle Limited Warranty.

63.     Further, in or around March 2022, before purchasing her vehicle, Ms. Jantz researched Mitsubishi Outlanders and came across complaints about the Hood Defect. She then inquired about the Hood Defect with the selling dealership, who assured her that the Jantz Vehicle was manufactured with Mitsubishi's modified hood, and as a result would not experience the hood flutter.

64.     Nonetheless, the Jantz Vehicle immediately began experiencing hood flutter after Ms. Jantz took possession of the vehicle, and Ms. Jantz found it "terrifying."

65.     Shortly after Ms. Jantz purchased her vehicle, she called Hurst and complained that her vehicle's hood was fluttering. In response, the dealership advised Ms. Jantz that based on the

Jantz Vehicle's VIN, the vehicle already has Mitsubishi's modified hood, and thus there was allegedly nothing else the dealer could do to attempt a repair regarding the hood flutter.

66.     Thereafter, on or about April 3, 2022, Ms. Jantz presented the vehicle to Hurst for an unrelated issue.  During the visit, Ms. Jantz complained to Hurst that the Jantz Vehicle's hood continues to flutter.  In response, the dealer inspected the vehicle and confirmed that her vehicle's hood continues to flutter.  The dealer additionally told Ms. Jantz that it could order a replacement hood for her, but the replacement hood is the same as the hood already installed on her vehicle currently.  Moreover, the dealer advised Ms. Jantz that she would need to wait approximately six to twelve (6-12) months for a replacement hood, and then additional time thereafter to have the hood painted the same color as her vehicle.  To date, Ms. Jantz has not received a replacement hood.

67.     In light of the Jantz Vehicle's unrepaired Hood Defect, and out of concern that the hood flutter will block her vision, and the hood may detach from the vehicle, Ms. Jantz avoids driving her vehicle on the highway.  As a result, and to avoid driving on the highway, Ms. Jantz often has to drive 20-30 additional minutes as part of her commute.

68.     On April 8, 2022, Ms. Jantz, through her counsel, sent a letter to Mitsubishi advising  that the Jantz Vehicle suffered from the Hood Defect, and still had not been repaired.

69.     The Jantz Vehicle still suffers from the Hood Defect.

70.     At all times, Ms. Jantz has driven her vehicle in a foreseeable manner, and in the manner in which it was intended to be used, notwithstanding the avoidance of highway speeds.

## V.    **Rocco Russo**

71.    On July 16, 2021, Mr. Russo leased a new 2022 Mitsubishi Outlander, Vehicle Identification Number JA4J3VA86NZ010607 (the "Russo Vehicle") from Jenkins Mitsubishi, an authorized Mitsubishi dealership located in Lakeland, Florida.

72.    Prior to entering into the lease agreement, Jenkins Mitsubishi assured Mr. Russo that the vehicle was accompanied by Mitsubishi's New Vehicle Limited Warranty.

73.    Shortly after leasing the vehicle, the Russo Vehicle began suffering from the Hood Defect.  When driving over 50 miles per hour the Russo Vehicle's hood began aggressively fluttering, shaking and vibrating.  Mr. Russo found the hood fluttering to be distracting, and feared that the hood would become detached from the rest of the vehicle.  Moreover, Mr. Russo's wife refuses to drive the Russo Vehicle until the Hood Defect is repaired.

74.    In or around December 2021, Mr. Russo contacted Mitsubishi regarding his vehicle's hood fluttering and was told that Mitsubishi  was aware of the issue.

75.    On February 17, 2022, Mr. Russo presented his vehicle to Jenkins Mitsubishi, and complained that his vehicle was shaking at highway speeds.  In response, Jenkins Mitsubishi acknowledged the issue, and told Mr. Russo that it was already aware of the Hood Defect. However, the dealership advised Mr. Russo that he would have to wait approximately eight (8) months for a replacement hood before the dealership could attempt a repair.

76.    Mr. Russo asked the Mitsubishi dealership to provide him with a loaner so that he and his wife could have a reliable alternative means of transportation while they awaited the repair attempt.  The dealership refused to provide Mr. Russo with a loaner vehicle.

15

77. On March 4, 2022, Mr. Russo, through his counsel, sent a letter to Mitsubishi advising that the Russo Vehicle suffered from the Hood Defect, and still had not been repaired despite Plaintiffs providing Mitsubishi a reasonable opportunity to cure the Hood Defect.

78. Because Mitsubishi failed to repair the Hood Defect, and refused to provide him with an alternative mode of transportation while he awaited a repair, on April 5, 2022, Mr. Rocco purchased a second vehicle for he and his wife to use.

79. The Russo Vehicle continues to suffer from the Hood Defect to date.

80. At all times, Mr. Russo has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## **FACTUAL ALLEGATIONS**

### **The Hood Defect**

81. The Mitsubishi Outlander is a compact crossover SUV manufactured by Japanese automaker Mitsubishi Motors.

82. Defendant Mitsubishi Motors North America, Inc. markets, distributes, sells, warrants, and services the Mitsubishi Outlander.

83. In February 2021 Mitsubishi unveiled the fourth generation of its Outlander SUV, as a 2022 model.

84. Since then, Mitsubishi has sold thousands of model year 2022 Outlander vehicles.

85. The Class Vehicles – which are the 2022 Mitsubishi Outlander vehicles – suffer from the Hood Defect, which causes the Class Vehicles' hood to flutter and bounce when driving at various speeds, driving in windy conditions, or driving over bumps. The hood flutters and bounces more violently as the vehicle's speed increases.

16

86.     The Hood Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers because the bouncing and fluttering of the hood causes the drivers to be concerned that the hood may be getting unlatched, and may open at any moment, and thus draws their attention to the Defect and away from the other vehicles or pedestrians.

87.     In addition, left unremedied the Hood Defect and related hood fluttering may cause additional damage over time to the vehicle's hood and other parts.  For instance, one Class Vehicle owner complained "[t]he hood flutter on our Outlander is pretty bad and I've started to notice that there is [sic] linear dents on the hood."[4]

88.     Further, upon information and belief, the unrepaired Hood Defect negatively impacts the Class Vehicles' aerodynamics, and results in a decline in the Class Vehicles' fuel economy.

89.     Mitsubishi had and has a duty to fully disclose the true nature of the Hood Defect to Class Vehicles owners because the Hood Defect poses an unreasonable safety hazard and prevents the Class Vehicles from providing safe and reliable transportation, and because Mitsubishi had and has exclusive knowledge or access to material facts about the Class Vehicles' hood that were and are not known to, or reasonably discoverable, by Plaintiffs and the other Class Members. However, Mitsubishi failed to disclose the Hood Defect to its customers prior to their purchase or lease of the Class Vehicles. Because the hoods in each Class Vehicle are defective, each Class Vehicles' hood should be repaired by Mitsubishi free of charge, regardless of whether the hood is exhibiting fluttering or not.

---

[4] *See* https://www.facebook.com/groups/865252344420006/permalink/958639518414621/

## Mitsubishi's Knowledge of the Hood Defect

90. Mitsubishi became aware of the Hood Defect before the Class Vehicles went on sale in February 2021 through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Mitsubishi's network of dealers and directly to Mitsubishi, aggregate warranty data compiled from Mitsubishi's network of dealers, testing conducted by Mitsubishi in response to consumer complaints, and repair order and parts data received by Mitsubishi from Mitsubishi's network of dealers.

91. During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles which would necessarily have taken place prior to February 2021, Mitsubishi, directly and/or through its agents or affiliated companies in the supply chain, necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicles' hoods: the types and properties of materials used to make them and/or parts and components responsible for securing the hoods, including their durability and whether those materials would weaken over time regardless of wear and use; the basic engineering principles behind their construction; the forces and stresses the hoods and/or parts and components responsible for securing the hoods would face; when and how the hoods and/or parts and components responsible for securing the hoods would fail to operate as intended; the passage of time, and environmental factors.

92. An adequate pre-release analysis of the design, engineering, and manufacture of the hoods and surrounding parts and components used for the Class Vehicles would have revealed to Mitsubishi that the hoods were insufficiently secured when operating the vehicle. Thus, during the

18

pre-release design stage of the Class Vehicles, Mitsubishi would have known that the hood and/or parts and components responsible for securing the hood chosen for the Class Vehicles were defective, fluttered, shook, and vibrated, and thus, prevented the Class Vehicles from providing safe and reliable transportation, and would pose a safety risk to owners/lessees and the motoring public.

93.     Upon information and belief, Mitsubishi also would have known about the Hood Defect because of the higher than expected number of warranty repair claims submitted to Mitsubishi by its dealers, which should have alerted Mitsubishi that these parts or components were defective. Upon information and belief, Mitsubishi service centers submit to Mitsubishi claims to be reimbursed for repairs they performed under Mitsubishi's warranties. Therefore, Mitsubishi would have detailed and accurate data regarding the number and frequency of repairs performed that involved the hood and/or parts and components responsible for securing the hood. The ongoing reimbursement for repairs that involved the hood and/or parts and components responsible for securing the hood was known to Mitsubishi, and would have alerted Mitsubishi that its hoods were defective, fluttered and vibrated, were not properly secured, and posed a safety risk early on.  Given that the Hood Defect manifests shortly after Class Vehicle owners begin driving the vehicles, Mitsubishi became aware of such complaints and warranty repair claims immediately after it began selling the Class vehicles.

94.     Mitsubishi also knew about the Hood Defect because numerous consumer complaints regarding hoods fluttering were made directly to Mitsubishi. The large number of complaints, and the consistency of their descriptions of hoods fluttering alerted Mitsubishi to this serious Defect affecting the Class Vehicles.  The full universe of complaints made directly to Mitsubishi about the Hood Defect is information presently in the exclusive custody and control of

Mitsubishi, and is not yet available to Plaintiffs prior to discovery. However, upon information and belief, many Class Vehicle owners complained directly to Mitsubishi, and Mitsubishi dealerships and service centers, about the repeated incidents of hoods fluttering in their Class Vehicles.

95. Indeed, by March 2021 Mitsubishi began issuing bulletins to its dealerships acknowledging that the Class Vehicles suffer from the Hood Defect and proposing (inadequate) repair attempts. Accordingly, Mitsubishi certainly became aware of the Hood Defect prior to March 2021.

### Mitsubishi's Technical Service Bulletins and Attempts to Cure the Hood Defect

96. Mitsubishi began investigating the Hood Defect as soon as the Class Vehicles went on sale, if not earlier (e.g., following the pre-release testing that revealed the Hood Defect to Mitsubishi).

97. In March 2021 – one month after Mitsubishi began selling the Class Vehicles – Mitsubishi issued a Technical Service Bulletin ("TSB") to its dealers No. TSB-21-42A-001. The TSB applied to all U.S. 2022 Outlander vehicles.

98. In that TSB Mitsubishi advised its dealerships:

> A hood flutter may occur on 2022 Outlanders. This is caused by improper Hood Latch and Bumper height alignment.
>
> The Hood Latch and Bumper Height must be adjusted to resolve this condition. Please refer to the procedure below.

99. The TSB provided instructions for the dealerships to perform the hood latch adjustment and hood bumper rubber adjustment, and stated that if "an affected vehicle is reported with the described condition," dealer shall "diagnose the condition, repair as described in this bulletin and submit a normal warranty claim" to Mitsubishi.

100.    Thus, in its March 2021 TSB Mitsubishi admitted the Class Vehicles suffer from the Hood Defect.

101.    However, the repair attempt proposed in TSB-21-42A-001 failed to resolve the Hood Defect.

102.    Thus, on April 16, 2021, Mitsubishi issued a notice to its service and parts managers entitled "2022 Outlander Hood Flutter Adjustment Special Customer Satisfaction Campaign." As its purpose, the directive said:

> Please use the following procedure on all 2022 Outlander vehicles (EXCLUDING ES MODELS) - currently in your inventory and those that will be arriving at your dealership in April - to install countermeasure weather-strips to resolve a hood flutter centered around air intrusion to the engine compartment. This procedure is in addition to TSB-21-42A-001 and will ensure that the wind intrusion is minimized.
>
> One set of parts will be automatically shipped for each vehicle currently in your inventory and anticipated shipments (EXCLUDING ES MODELS) received in April.

103.    Thus, in this April 2021 directive, Mitsubishi recognized that air intrusion causes the Class Vehicles' hoods to flutter and introduced a proposed countermeasure – replace three weather-strips that attach to the hood – in addition to performing adjustments under TSB-21-42A-001 to all Class Vehicles.

104.    Mitsubishi thereafter issued a revised bulletin to its dealerships, TSB-21-42A-001REV, on April 23, 2021, "to provide a clean point for the Hood Latch Adjustments."

105.    In addition, TSB-21-42A-001REV now stated that hood flutter may occur only on certain 2022 Outlanders produced prior to March 25, 2021.

106.    Despite its knowledge of the Hood Defect and apparent inability to fix it, Mitsubishi has continued selling and leasing vehicles with the Hood Defect without disclosing the same to Class Vehicle owners and to new Class Vehicles purchasers or lessees.

21

107.    On June 3, 2021, Mitsubishi issued a second revision toTSB-21-42A-001, TSB-21-42A-001REV2, which also claimed that the Hood Defect was limited to vehicles produced prior to March 25, 2021.

108.    However, less than three weeks later on June 22, 2021, Mitsubishi issued TSB-21-42A-005, entitled "Hood Flutter," wherein Mitsubishi acknowledged that Class Vehicles produced up until May 12, 2021 suffer from the Hood Defect and needed repairs – replacing the weather strips, which varied based on production date.

109.    Further, in TSB-21-42A-005 Mitsubishi advised that "Countermeasure front end and grill side (both LH/RH sides) weather strips with internal padding have been incorporated into production as of May 2021, to *minimize* the hood flutter." (emphasis supplied). Mitsubishi thus admitted that the proposed counter measures merely minimized but did not resolve the Hood Defect.

110.    Moreover, rather than issue a recall, Mitsubishi's TSB-21-42A-005 instructed the dealers to  perform Hood Defect repairs "on a customer complaint basis only."

111.    Notably, despite its knowledge of the Hood Defect and inability to repair it, Mitsubishi has continued selling and leasing vehicles with the Hood Defect without disclosing same to new Class Vehicles purchasers or lessees or current Class Vehicle owners.

112.    On November 19, 2021, Mitsubishi issued a notice to its dealers entitled "Assembly method change for Hood, Front Weather Strip, & Grill." The stated purpose was "For vehicles that may continue to exhibit hood fluttering, the hood should be replaced with a new hood where reinforcement has been added (65100W060P or 65100W080P). A change in the weather strip from a full clip style attachment to a new style which requires installation over the front lip of the hood,

has also been made. The new weather strip (65820W010P or 65820W020P) should be installed prior to re-installation of the grill (from original hood)."

113. Thus, Mitsubishi acknowledged that Class Vehicles that had received its prior proposed repair attempts and "countermeasures" continued to experience the Hood Defect thereafter.

114. On December 22, 2021, Mitsubishi issued TSB-21-42A-011, entitled "Modified Hood For Hood Flutter - 2022 Outlander," which applied to all 2022 Outlander vehicles and instructed dealers to install a new modified and allegedly reinforced hood. It provided different instructions based on whether the vehicle was built after March 25, 2021, May 12, 2021 or November 11, 2021.

115. However, in a letter issued to the dealers on the same day, December 22, 2021, Mitsubishi notified its dealerships that "there is an extremely limited number of new hoods currently available."

116. As a result of the "extremely limited number of new hoods currently available," Class Vehicle owners continued to complain that they were not given replacement hoods following the December 2021 TSB. For instance, one Class Vehicle owner complained on January 19, 2022 that they "had taken the vehicle to the dealer on multiple occasions [regarding the Hood Defect] and was recently informed that it would take approximately 4 to 5 months before the hood could be replaced." (NHTSA Complaint, January 19, 2022, ID No. 11448069). Likewise, on January 25, 2022 another Class Vehicle owner complained that she had already notified the manufacturer and dealer and was told that "a new hood would be ordered however, there was no arrival date available" and "[t]he vehicle had yet to be repaired." (NHTSA Complaint, January 25, 2022, ID No. 11448824). And on January 31, 2022 another owner complained that "[t]he dealer told me

several times since 2021 November that the manufacturer should have a new hood within one month and it's about to February and it still isn't fixed!" (NHTSA Complaint, January 31, 2022, ID No. 11449500).

117.   To date – five months later – Class Vehicle owners continue to complain about their inability to get replacement hoods and months-long waits. For example, Plaintiff Russo is still awaiting replacement hoods. Similarly, one Class Vehicle owner posted on an Outlander Facebook group on March 31, 2022, "They told me 9 month wait for my hood. It's been 3. They have no updates as of last week"[5]  Another owner complained on April 22, 2022, "I have been waiting over 1 year now for the replacement hood! Constant run around from dealership and mitsubishi! I live in a rural area and drive gravel roads and 2 lane hwys a lot. Anytime a farm semi passes me it about gives me a heart attack with how much my hood flys up! The constant flutter gives me horrible anxiety and makes me question the integrity of my outlander!"[6] [typos in original].

118.   On January 14, 2022, Mitsubishi issued a Technical Information Notice to its dealerships regarding TSB-21-42A-011.   The notice stated that "vehicles produced after 11/11/2021 have the reinforced hood installed on the production line and do not require hood replacement or the other previously released TSB's. This new hood with the added reinforcement has essentially eliminated the flutter condition. These vehicles are now arriving at your dealerships so please be aware of this clean point."   Thus, Mitsubishi acknowledged that the purportedly "reinforced" hood did not entirely eliminate the Hood Defect but, even in Mitsubishi's own telling, only "essentially eliminated the flutter condition."

---

[5]
https://www.facebook.com/groups/865252344420006/posts/1012886209656618/?comment_id=1012907942987778
[6]
https://www.facebook.com/groups/865252344420006/posts/1000599497551956/?comment_id=1027147178230521

119.    The Notice further acknowledged that "customer[s]" may continue to "express[ ] a hood flutter concern on a 2022 Outlander built after 11/11/2021" but instructed dealers to "not replace the hood" and instead attempt a repair following a separate procedure.

120.    Class Vehicle owners – including those with vehicles manufactured after November 2021 such as Plaintiffs Damocles and Jantz – continue to complain that they experienced the Hood Defect with the "reinforced" hoods. *See, e.g.*:

- NHTSA Complaint, February 28, 2022, ID No. 11454462: The hood on my 2022 Mitsubishi Outlander SE AWD shakes at speeds 50 mph and higher. My Outlander was produced in November 2021. The hood shakes so violently that I am afraid it might fly open

121.    Moreover, replacement hoods are painted by third parties and dealers have warned Class Vehicle owners that the replacement hood may be painted a different color that does not match the rest of the vehicle. For instance, one Class Vehicle complained on March 1, 2022, "Mitsubishi is recommending replacing the whole hood. The dealers will get the new hood & will need to paint it to match your car. The service manager said it may not match your paint exactly so you may want to think about moving ahead with that option. So frustrating. They tried fixing it twice and mine still flutters."[7]

122.    Further, those Class Vehicle owners who have gotten their hoods replaced report that they have been required by Mitsubishi dealers to sign paperwork agreeing that their vehicle's replacement hoods may be painted a different color than the rest of the vehicle, and may decrease their vehicle's  value as a result.  For instance, one Class Vehicle owner wrote on March 31, 2022, "I signed a paper at dealership stating that after the hood replacement my cars value might go down

---

[7] https://www.facebook.com/groups/865252344420006/permalink/993881648223741/

because of the painting that would be done outside of the factory."[8]  Another Class Vehicle owner was required to sign a "Hood Flutter Repair Disclosure" form prior to getting a replacement hood that stated, *inter alia,* that they "understand that every effort possible will be made to match the new hood's color to the color of my vehicle based on factory specifications but an 'exact' match may not be possible. In some cases, it may require the fenders to be blended to better match the new paint."

123.     Accordingly, not only has Mitsubishi been unable to remedy the Hood Defect, but it also acknowledges that its repair attempts may further reduce the value of the vehicles.

## The NHTSA Complaints and Online Discussions of the Hood Defect

124.     Upon information and belief, thousands of purchasers and lessees of the Class Vehicles have experienced the Hood Defect.  The below example complaints concerning 2022 Mitsubishi Outlander vehicles were filed by consumers with the NHTSA and posted on the Internet, documenting the Hood Defect is widespread and dangerous. Upon  information and belief Mitsubishi actively monitored the postings during the relevant time period and that Mitsubishi has known about the defect at all relevant times.

- NHTSA Complaint, July 21, 2021, ID No. 11421741: I just bought a 2022 Mitsubishi Outlander and I noticed while driving on the highway around 60 to 70 MPH the hood is fluttering. I checked the hood just to make sure it was not unlatched and it was secured but the hood continues to flutter looking like it wants to open during highway driving.

- NHTSA Complaint, July 31, 2021, ID No. 11427249: The front hood is structurally weak, causing flexing, bouncing, and fluttering. When driving over 55 mph, you feel as though the hood is going to open up while driving. It is a very unsettling and unsafe feeling when driving on the highway. You feel as though the hood is going to open up

---

8

https://www.facebook.com/groups/865252344420006/posts/1012886209656618/?comment_id=1013017239643515

and smash against the windshield. When driving on surface streets where there are bumps in the road, the hood moves a lot.

- <u>NHTSA Complaint, August 23, 2021, ID No. 11430174</u>: At 45 mph and above the hood flutters violently.

- <u>NHTSA Complaint, August 23, 2021, ID No. 11430120</u>: I have taken my SUV for to updates in regaurds to repairing the hood that shakes and bounces. It moves up and down when going down the road fast or slow. Its not only the wind that causes this it is also bumps in the road. It oftem seams the hood will fly up and can be pretty scarry. I fewel something needs to be done to help support the hood and make it samefer. If it keeps moving metal fatigue could occure and cause a safety issue that could lead to a death. [Typos in original}.

- <u>NHTSA Complaint, August 25, 2021, ID No. 11430424</u>: Hood raises and flutters at speeds greater than 60 miles per hour. It has been taken to the dealership to be fixed and the issue continues.

- <u>NHTSA Complaint, September 7, 2021, ID No. 11431960</u>: My 2022 Mitsubishi Outlander hood vibrates during drives. The vibration starts when the car is moving around 35 - 40 mph or more. I confirmed that it was properly closed, but it concerns me because this repetitive movement may loosen the hood locking system during any future drive. This problem may cause a potentially fatal accident.

- <u>NHTSA Complaint, September 11, 2021, ID No. 11432608</u>: Has significant hood movement at speeds over 50 mph.

- <u>NHTSA Complaint, October 18, 2021, ID No. 11437269</u>: Going down the highway and the hood start to look like it's coming off the car.

- <u>NHTSA Complaint, October 19, 2021, ID No. 11437314</u>: The contact owns a 2022 Mitsubishi Outlander. The contact stated while driving 50 MPH, she saw that the hood was slightly opening and closing. The contact stated no warning light was illuminated. The contact took the vehicle to the local dealer, where it was diagnosed with needing the hood latch to be adjusted. The vehicle was repaired but continued to experience failure. The contact took the vehicle back for the second time to the local dealer, where it was diagnosed with needing the hood to be filled with epoxy. The vehicle was repaired but continued to experience failure. The contact took the vehicle back for a third time to the local dealer, where it was diagnosed with needing the windshield guard to be added to the hood. The vehicle was repaired but continued to experience failure. The contact took the vehicle back for the fourth time to the local dealer but the vehicle

27

was not diagnosed or repaired. The manufacturer had been informed of the failure. The failure mileage was approximately 430.

- NHTSA Complaint, October 21, 2021, ID No. 11437717: The contact owns a 2022 Mitsubishi Outlander. The contact stated while driving approximately 45 MPH, the hood started to vibrate abnormally. The contact was concerned that the hood would open inadvertently. The vehicle was taken to a local dealer and was diagnosed with needing weather-stripping to be replaced. The vehicle was not repaired. The manufacturer was not informed of the failure. The failure mileage was approximately 8.

- NHTSA Complaint, October 23, 2021, ID No. 11437923: The hood shakes during operation of the vehicle. It seems to be latched but it seems like it is going to open at anytime driving at higher speeds.

- NHTSA Complaint, October 29, 2021, ID No. 11438620: At higher highway speeds the hood gets air under it, causing the hood to "flutter" or "bounce". At higher speeds it looks like the hood could almost fly up. I feel very unsafe driving with this, i've been told it can't make my hood fly up, but i worry about it everytime i drive.

- NHTSA Complaint, October 31, 2021, ID No. 11438815: Hood has a flutter when reaching certain speeds and hitting bumps.

- NHTSA Complaint, November 2, 2021, ID No. 11439003: CAR ENGINE HOOD SHAKES VIOLENTLY AT SPEEDS HIGHER THAN 45 MILES PER HOUR. THE HIGHER THE SPEEND THE MORE IT SHAKES. MY WIFE IS AFRAID TO DRIVE IT. MANY OTHER OWNERS ARE COMPLAINING OF SAME ISSUE AND HAVE TAKEN OUTLANDER IN FOR SERVICE WITHOUT FAVORORABLE RESULTS. ISSUE STILL PERSISTS. I WILL TAKE MY OUTLANDER FOR SERVICE AS SOON AS I AM ABLE.

- NHTSA Complaint, November 6, 2021, ID No. 11439558: Good morning. Mitsubishi attempted fix at my hood flutter recall in July 2021 and problem still active. Hood bounces and flutters and is very distracting. There is no permanent fix at this time. Also, the forward collision included in the MiPilot is not active. When looking at the manual, the image of a "car" appears when system is engaged. For my vehicle, this is not showing as active. Again, no fix or remedy from dealer and Mitsubishi tech support. Very unsettling as this would really assist with distracted driving while the hood is bouncing around.

- NHTSA Complaint, November 10, 2021, ID No. 11440049: When this vechile [sic] reaches speed over 45 miles per hour..the front hood .flutters and shakes as if it's going

to fly open blocking the driver from seeing the road..also over time the vibration will crack the latch.making it a deadly dangerous situation..thanks

- <u>NHTSA Complaint, November 10, 2021, ID No. 11440039</u>: the hood of the car flutter could cause an accident.

- <u>NHTSA Complaint, November 26, 2021, ID No. 11441422</u>: The vehicles hood shakes and flutters when traveling above approximately 45mph and gets worse the faster vehicle travels. I fear this is causing excess wear on the hood latch and the hood will eventually fly up causing driver to be unable to see. Been like this since new. Has been back go dealership twice with no fix.

- <u>NHTSA Complaint, November 26, 2021, ID No. 11441725</u>: When driving at freeway speeds in windy condition, the hood shakes and flexes in a frightening manner, suggesting that the hood could be flying open at any moment. This is visible and upsetting from a driver or passenger viewpoint. My first impression was that the hood was made of too thin metal and that certain wind dynamics at highway speeds causes this shocking flexing and shaking. This was a brand new vehicle with under 100 miles on it. The next day I returned the vehicle to the dealer and they returned my down payment check that I had given then two days earlier, thus cancelling the deal. It seems they had heard of this issue before.

- <u>NHTSA Complaint, December 1, 2021, ID No. 11442304</u>: At higher speeds 55+ the hood of the car flexes and moves violently as if it were not completely latched. Upon further inspection once I stopped the hood was properly latched.

- <u>NHTSA Complaint, December 3, 2021, ID No. 11442597</u>: When driving on highway you the hood of the car fluttering and vibrating. It is very scary and I always feel like the hood is coming off.

- <u>NHTSA Complaint, December 3, 2021, ID No. 11442581</u>: The hood flutters at any speed or if u hit a bump to the point it is not safe.

- <u>NHTSA Complaint, December 6, 2021, ID No. 11442863</u>: The hood flutters violently while driving. The manufacturer has already issued a TSB to try to fix the issue but it has not. There are hundreds if not thousands of complaints online about this issue. I'm afraid that the hood may fly up while driving.

- <u>NHTSA Complaint, December 14, 2021, ID No. 11443837</u>: Since having purchased the vehicle in October 2021, the hood flutters/vibrates whenever the vehicle is being driven at speeds of 60MPH or more. The faster the vehicle drives, the more violently the hood flutters/vibrates. We have taken it to the dealer for repair, and they informed

us that Mitsubishi is aware of the issue but they have yet to issue repair or do a recall. After speaking with Mitsubishi Corporate in the US, they said they are not planning to do a recall or offer a timeframe for a repair, but fully admitted to being aware of the issue, After doing research online, I found that many if not most of the 2022 Outlanders have this very serious issue. Not only is it scary driving with the hood vibrating, but it will cause unnecessary wear and tear on the vehicle and possibly cause a catastrophic incident. The vehicle is readily available for inspection. We want Mitsubishi to do the right thing and recall the vehicle and provide a permeant fix ASAP.

- <u>NHTSA Complaint, December 28, 2021, ID No. 11445354</u>: The hood is fluttering after 25mph.

- <u>NHTSA Complaint, December 29, 2021, ID No. 11445495</u>: The hood shakes when driving above 40MPH, it increases intensity as you drive faster, feeling like it will come unlatched, resulting in an accident. Is there going to be a recall for this?

- <u>NHTSA Complaint, January 1, 2022, ID No. 11445809</u>: The hood flutters or bounces at any speed over 30. Gets significantly worse the faster you go making you feel unsafe like the hood will fly open. Even on bumps the hood shakes. There are no recalls and most dealerships are offering temporary fixes. Mitsubishi is aware of the problem but not doing anything about it. I've done research and this is a huge issue with this model. No owner has been given a good "fix."

- <u>NHTSA Complaint, January 2, 2022, ID No. 11445853</u>: When the vehicle goes above 50 mph the hood begins to move in a fluttering manner. The faster you go the worse the hood moves.

- <u>NHTSA Complaint, January 2, 2022, ID No. 11446066</u>: The hood of my vehicle is always shaky and seems that it would come off the engine whenever I accelerate on the highway and when the vehicle is operating in a high wind environment. Why? This incident is happening always.

- <u>NHTSA Complaint, January 3, 2022, ID No. 11445965</u>: I purchased this vehicle on 12/24/2021. After purchasing and driving off the lot, I noticed a significant amount of hood fluttering. Irrespective of the speed , the flutter is significant and a distraction and can affect one driving safely.

- <u>NHTSA Complaint, January 3, 2022, ID No. 11445964</u>: I purchased this vehicle on 12/24/2021. Today 01/03/2022 I was taking it to the dealership for a very severe case of the hood fluttering and my forward collision warning came on for no reason and began flashing and I got the message that the system is off. I informed the dealership about it and they said there was some glitch in the system and they reset it. At about

one mile from home after leaving the dealership, the same warning came on. I'm afraid that in an emergency situation where and when needed the system will not respond as designed.

- NHTSA Complaint, January 14, 2022, ID No. 11447558: Hood shakes with speeds greater than 30mph. When on the highway the shaking is violent and it seems the hood will fly open. The shops I have called say Mitsubishi is aware of the issue and not fixing it at this time.

- NHTSA Complaint, January 14, 2022, ID No. 11447520: My vehicle hood is shaking/fluttering as if it is not latched properly. I am concerned this may fly up and cause an accident. I have had my vehicle less than a month.

- NHTSA Complaint, January 17, 2022, ID No. 11447774: When driver at a speed of 45 or higher the hood vibrates looks as though it's going to come up or fly off. It's very concerning need this fixed asap.

- NHTSA Complaint, January 19, 2022, ID No. 11448069: The contact owns a 2022 Mitsubishi Outlander. The contact stated that while driving at various speeds, the hood would raise up however, the hood latch kept the hood from opening. The contact had taken the vehicle to the dealer on multiple occasions and was recently informed that it would take approximately 4 to 5 months before the hood could be replaced. The manufacturer was notified of the failure and promised the contact a callback, however, the contact had not yet received a callback. The vehicle was not repaired. The failure mileage was 0.

- NHTSA Complaint, January 22, 2022, ID No. 11449262: When driving 65mph on highway hood flutters. This is causing anxiety thinking hood will become loose. I've spoken to the dealership and they did assure me that it will not However it's impossible to say that it would never happen. This is a huge safety issue and something that needs to be rectified.

- NHTSA Complaint, January 25, 2022, ID No. 11448824: The contact owns a 2022 Mitsubishi Outlander. The contact stated that while driving at various speeds, the hood would vibrate and lift up without warning. She also stated that the failure would occur while driving over bumps or while passing large vehicles. The contact had taken the vehicle to the dealer where she was initially informed that there was no remedy for the failure. The manufacturer was also notified of the failure and referred her back to the dealer for assistance. The dealer stated that a new hood would be ordered however, there was no arrival date available. The vehicle had yet to be repaired. The failure mileage was approximately 1,700.

31

- <u>NHTSA Complaint, January 31, 2022, ID No. 11449500</u>: Upon purchasing a BRAND new 2022 vehicle you expect the vehicle to be in great shape with no cosmetic issues nor issues under the hood well that wasn't the case for me. I test drove the vehicle locally and it was fine. After a couple weeks I needed to drive on I95 and when I got up close to 60MPH THE HOOD STARTED FLUTTERING LIKE IT WAS ABOUT TO BLOW OFF! I was freaking out and swerved because I was watching the hood praying f it wouldn't fly off! My kids were in the vehicle with me as well. I called and spoke with Mitsubishi and they offered a temporary sealant that "could" stop the fluttering. It didn't! I contacted them immediately and informed them this has to be replaced or fixed correctly! I've been going back and forth with the dealer and WellsFargo to cancel the loan and get my money back! The dealer told me several times since 2021 November that the manufacturer should have a new hood within one month and it's about to February and it still isn't fixed!

- <u>NHTSA Complaint, February 7, 2022, ID No. 11450725</u>: The car hood doesn't close tight enough and it feels like it will come open when driving on highway with high speed. Lots of vibration and movement in the hood cover. It feels like it is not securely shutt .

- <u>NHTSA Complaint, February 11, 2022, ID No. 11451621</u>: When driving on the expressway at speeds above 50mph, the hood appears to lift up. Almost as if it's about to detach or lift up from the base. I am worried this may cause an accident to my family or others.

- <u>NHTSA Complaint, February 13, 2022, ID No. 11451757</u>: The Hood Flutters violently while driving making it a constant distraction with the fear that the hood will come loose and strike the windshield or fly off while driving

- <u>NHTSA Complaint, February 15, 2022, ID No. 11452122</u>: The hood shakes and moves on highway. Looks like it going to come open.

- <u>NHTSA Complaint, February 15, 2022 , ID No. 11452011</u>: The hood rattles, and moves with every bump. I passed a semi truck going approximately 60 mph, the hood looked like it was going to fly up and hit windshield.

- <u>NHTSA Complaint, February 18, 2022, ID No. 11452808</u>: Hood flutters excessively at highway speed. I don't want to drive above 60mph for fear that the hood and latch will fatigue and strain to keep the hood in place. I fear the hood flying off and causing an accident or fatality. This is a design issue that may be life threatening and is keeping me from utilizing the vehicle at highway speed thus diminishing value and causing excessive fear of endangering the highway safety.

32

- NHTSA Complaint, February 21, 2022, ID No. 11453318: The hood vibrates uncontrollably at highway speed. It looks like the hood is about to come off and crash into the windshield. I called both the manufacturer and the dealer. I was told they know about the problem, but they have not figured out a fix. Mitsubishi told me they might have to replace the hood and repaint the entire car or add additional equipment to secure the hood. Mitsubishi sent me an email survey which I filled it out and returned to them. The second time I called them about the problem they told me to take it to the dealer. The problem first occurred when I drove it at highway speed. When I took another highway drive it happened again, and I pulled over to make sure the hood was closed and locked into place. Finally on January 15, 2022, I took a longer trip to another state, and it was really bad. Another person in the car saw the obvious problem and we pulled over to check the hood. We did not know why the hood was bouncing so violently and I immediately contacted both the manufacturer and dealer.

- NHTSA Complaint, February 22, 2022 , ID No. 11453437: The front hood is structurally weak, causing flexing, bouncing, and fluttering. When driving over 55 mph, it feels like the hood is going to pop open while driving. It is a very distracting and unsafe feeling when driving on the highway.

- NHTSA Complaint, February 27, 2022, ID No. 11454358: Hood flutters or vibrates when driving 60 mph and above .

- NHTSA Complaint, February 28, 2022, ID No. 11454462: The hood on my 2022 Mitsubishi Outlander SE AWD shakes at speeds 50 mph and higher. My Outlander was produced in November 2021. The hood shakes so violently that I am afraid it might fly open

- NHTSA Complaint, March 9, 2022, ID No. 11455902: I purchased 2022 Outlander in September of 2021. The hood on the vehicle at any speed looks as though it is going to fly up but gets much worse at higher speeds and on the highway. It actually looks like it is going to break loose and fly up and hit the wind shield. It is scary to drive at times thinking this will happen . . .

- NHTSA Complaint, March 25, 2022, ID No. 11458387: . . . after many calls an a few visits to the dealership they haven't been able to address nor fix the fluttering in the hood and rear bumper which we consider is really dangerous. Is Mitsubishi waiting for a tragedy to happen?

- NHTSA Complaint, April 8, 2022, ID No. 11460187: My problem is the flapping of the hood of my vehicle, this happens on the highway and in the city, this starts at speeds of 60mph or on roads in poor condition, with strong winds this gets worse it looks like

it is going to fly away, I already visited 2 times my local dealer where i bought it but couldn't fix it

- <u>NHTSA Complaint, April 9, 2022, ID No. 11460265</u>:  The day I purchased the vehicle I had to get on the interstate to drive home. I was going 65-70 and I thought the hood would fly up. It vibrates like crazy and flutters. It's a serious safety distraction as you are looking at the hood constantly to make sure it stays down. I called the dealership and they said they had never heard of this and would have the service department reach out. They didn't. It still happens everyday.

125.    In addition to the above NHTSA complaints, consumers were discussing the Hood Defect online on Outlander-enthusiast websites as early as July 24, 2021.[9] Upon information and belief, Mitsubishi regularly monitors these websites.

126.    Although at all times relevant to this Complaint, Mitsubishi is and has been aware of the widespread nature of the Hood Defect in the Class Vehicles, and that it posed safety risks, Mitsubishi has failed to take adequate steps to notify all Class Vehicle owners of the Hood Defect and provide relief.

127.    Customers have reported the Hood Defect in the Class Vehicles to Mitsubishi directly and through its dealers. Defendant is fully aware of the Hood Defect contained in the Class Vehicles. Nevertheless, Defendant actively concealed the existence and nature of the Defect from Plaintiffs and the other Class Members at the time of purchase and thereafter.  Specifically, Defendant:

      a.   failed to disclose, at the time of purchase or lease and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Hood Defect;

---

[9] *See*  https://www.outlanderforums.com/threads/front-hood-issue-with-new-2022-outlander.166/ (discussions and complaints about Hood Defect was topic of conversation as of July 24, 2021) (last visited May 18, 2022).

b.  failed to disclose, at the time of purchase and thereafter, that the Class Vehicles and their hoods were not in good working order, were defective, and were not fit for their intended purpose; and,

c.  failed to disclose and/or actively concealed the fact that the Class Vehicles and their hoods were defective, despite the fact that Defendant learned of the Hood Defect as early as March 2021, if not before.

128.  Defendant has deprived Class Members of the benefit of their bargain and exposed them all to a dangerous safety Hood Defect.

129.  Defendant has not recalled the Class Vehicles to repair the Hood Defect, and has not made available to all of its customers a suitable repair or replacement of parts related to the Hood Defect within a reasonable period of time.

130.  Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

131.  As a result of the Hood Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's hood is not defective and will not flutter and bounce when driving.  Plaintiffs and Class Members further expect and assume that Mitsubishi will not sell or lease vehicles with known safety defects, such as the Hood Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair. They do not expect that Mitsubishi would fail to disclose the Hoof Defect to them, and then purport to remedy the defect with an underinclusive and inadequate Technical Service Bulletins.

132.  Mitsubishi's conduct complained of herein is ongoing in nature.

# CLASS ACTION ALLEGATIONS

## A. The Classes

133.   Plaintiffs bring this case as a class action on behalf of a nationwide class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

> **Nationwide Class:** All persons or entities in the United States who bought or leased any 2022 Mitsubishi Outlander (the "Nationwide Class").

134.   In the alternative to the Nationwide Class, Plaintiffs seek to represent the following state-specific classes pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3), and/or Fed. R. Civ. P. 23(c)(5):

> **Florida Class:** All persons who purchased or leased any 2022 Mitsubishi Outlander in the State of Florida (the "Florida Class").

> **Illinois Class:** All persons who purchased or leased any 2022 Mitsubishi Outlander in the State of Illinois (the "Illinois Class").

> **Minnesota Class:** All persons who purchased or leased any 2022 Mitsubishi Outlander in the State of Minnesota (the "Minnesota Class").

> **New York Class:** All persons who purchased or leased any 2022 Mitsubishi Outlander in the State of New York (the "New York Class").

> **Texas Class:** All persons who purchased or leased any 2022 Mitsubishi Outlander in the State of Texas (the "Texas Class").

135.   Defendant and its employees or agents are excluded from the Classes.

136.   Taken together, the Nationwide Class and state-specific classes are referred to as "Classes."

## B. Numerosity

137.   Upon information and belief, the Classes are each so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis

36

allege, that thousands of Class Vehicles have been sold and leased Nationwide and in the States of Florida, Illinois, Minnesota, New York and Texas.

### C. Common Questions of Law and Fact

138. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions include:

a. whether the Class Vehicles suffer from the Hood Defect;

b. whether the Hood Defect constitutes an unreasonable safety hazard;

c. whether and when Defendant first learned about the Hood Defect;

d. whether the defective nature of the Class Vehicles' hood constitutes a material defect;

e. whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles' hood to Plaintiffs and the other Class Members;

f. whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g. whether Defendant knew or reasonably should have known of the Hood Defect contained in the Class Vehicles before it sold or leased them to Class Members;

h. whether Defendant breached its express warranty and the implied warranties of merchantability; and

i. whether Defendant violated the Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, et seq., the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, et seq., the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68, N.Y. Gen. Bus. Law § 349, and the Texas Deceptive Practices Act, Tex. Bus. & Com. Code § 17.41, et seq., as alleged in this Complaint.

### D. Typicality

139.    The Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs each purchased and leased defective Class Vehicle, as did each member of the Classes.  Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

### E.    Protecting the Interests of the Class Members

140.    Plaintiffs will fairly and adequately protect the interests of the Classes, and have retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiffs nor their counsel have any interest which might cause them not to vigorously pursue this action.

### F.    Proceeding Via Class Action is Superior and Advisable

141.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, inter alia, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

142.     Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION
**Breach of Express and Implied Warranties Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.***
**(Plaintiffs on behalf of the Nationwide Class or in the alternative the Florida, Illinois, Minnesota, New York and Texas Classes)**

143.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

144.     Plaintiffs and members of the Class are each a "consumer" as defined in 15 U.S.C. § 2301(3).

145.     Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

146.     The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6).

147.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

148.     15 U.S.C. § 2304(a)(1) requires Defendant, as warrantor, to remedy any defect, malfunction or nonconformance of the subject vehicles within a reasonable time, and without charge to the Plaintiffs.

149.     Defendant's sale of the defective Class Vehicles to Plaintiffs and putative class members, and Defendant's failure to repair the Class Vehicles' Hood Defect within a reasonable period of time and/or a reasonable number of attempts, constitutes a breach of the written and implied warranties applicable to the Class Vehicles.

150.     Defendant's breaches of the written and implied warranties constitute a breach of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*

151. As a result of Defendant's breaches of the written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiffs and class members have suffered damages.

**SECOND CAUSE OF ACTION**
**Fraudulent Concealment**
**(Plaintiffs on behalf of the Nationwide Class or in the alternative the Florida, Illinois, Minnesota, New York and Texas Classes)**

152. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

153. Prior to selling the Class Vehicles to Plaintiffs and the Class, Defendant knew that the Class Vehicles suffered from the Hood Defect.

154. By failing to disclose and concealing the Hood Defect from Plaintiffs and Class Members, Defendant concealed and suppressed material facts concerning the performance and quality of the Class Vehicles.

155. Defendant was under a duty to Plaintiffs and the Class Members to disclose the Hood Defect and/or the associated repair costs because:

   a. Defendant was in a superior position to know the true state of facts about the Class Vehicles' Hood Defect;

   b. Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use;

   c. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their vehicles have the Hood Defect until after they purchased the Class Vehicles; and

   d. Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and the Hood Defect.

156. On information and belief, Mitsubishi still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the Hood Defect and the performance and quality of Class Vehicles.

157. The facts concealed or not disclosed by Defendant to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

158. Plaintiffs and the Class relied on Defendant to disclose material information it knew, such as the Hood Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

159. By failing to disclose the Hood Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

160. The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

161. Had Plaintiffs and other Class Members known that the Class Vehicles suffer from the Hood Defect, they would not have purchased the Class Vehicles or would have paid less for them.

162. Plaintiffs and the other Class Members are reasonable consumers who do not expect that their vehicles' hoods will aggressively flutter or will suffer from the Hood Defect, which is the reasonable and objective consumer expectation for vehicles and their hoods.

163. As a result of Defendant's misconduct, Plaintiffs and the other Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles and their

hoods are defective and require repairs or replacement, and are worth less money because of the Hood Defect.

164.    Accordingly, Mitsubishi is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

165.    Mitsubishi's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Classes' rights and well-being, to enrich Mitsubishi. Mitsubishi's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

166.    Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Mitsubishi has profited and benefited from Plaintiffs' and Class Members' purchase of Class Vehicles containing the Hood Defect. Mitsubishi has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Mitsubishi's misconduct alleged herein, Plaintiffs and Class Members were not receiving vehicles of the quality, nature, fitness, or value that had been represented by Mitsubishi, and that a reasonable consumer would expect.

167.    Mitsubishi has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles, and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Mitsubishi to retain these profits and benefits, and Mitsubishi should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

### THIRD CAUSE OF ACTION
#### Unjust Enrichment
**(Plaintiffs on behalf of the Nationwide Class or in the alternative the Florida, Illinois, Minnesota, New York and Texas Classes)**

168.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

169.    Mitsubishi has long known about the Hood Defect which it concealed and failed to disclose to Plaintiffs and Class Members.

170.    As a result of its fraudulent acts and omissions related to the Hood Defect, Mitsubishi obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and Class Members.

171.    Mitsubishi appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Hood Defect, paid a higher price for their vehicles which actually had lower values. Mitsubishi also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

172.    It would be inequitable and unjust for Mitsubishi to retain these wrongfully obtained profits.

173.    Mitsubishi's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

174.    As a result of Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

175.    Plaintiffs does not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

176.    Additionally, Plaintiffs seeks injunctive relief to compel Defendant to offer, under warranty, remediation solutions that Defendant identifies. Plaintiffs also seeks injunctive relief enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendant from selling the Class Vehicles with the misleading information; compelling Defendant to provide Class members with replacement components that do not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Monetary damages alone are not an adequate remedy for the above requested non-monetary injunctive relief.

### FOURTH CAUSE OF ACTION
**Breach of Implied Warranty of Merchantability**
**Pursuant to F.S.A. § 672.314**
**(Plaintiff Russo on behalf of the Florida Class)**

177.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

178.    Defendant is a merchant with respect to motor vehicles.

179.    The Russo Vehicle and Florida Class Vehicles were each subject to implied warranties of merchantability, as defined in F.S.A. § 672.314, running from the Defendant to Plaintiff Russo and Florida Class Vehicle owners.

180.    An implied warranty that the Russo Vehicle and Class Vehicles were merchantable arose by operation of law as part of the purchase or lease of the subject vehicles.

181.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein, and thus were not in merchantable condition when Plaintiff Russo and the Florida Class Members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purpose for which such

44

vehicles are used. Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from the Hood Defect which can make driving unreasonably dangerous.

182. Plaintiff Russo and Florida Class Members used their Class Vehicles for the ordinary purpose for which consumer automobiles are used — to transport passengers and belongings reliably, comfortably, and safely for personal, family, or household purposes.

183. Despite Plaintiff Russo and Florida Class Members' ordinary and expected use of their vehicles, the Class Vehicles did not adhere to minimal consumer expectations, were not of fair and average quality, and would not pass without objection in the consumer automotive industry at the time of sale.

184. As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## FIFTH CAUSE OF ACTION
### Breach of Express Warranty Pursuant to F.S.A. § 672.313
### (Plaintiff Russo on behalf of the Florida Class)

185. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

186. In connection with the sale or lease of the Class Vehicles to Plaintiffs and Class Members, Defendant provided Plaintiffs and Class Members with a New Vehicle Limited Warranty, under which it agreed to repair defective parts for the five year or 60,000 mile period following the date of the original retail delivery or date of first use.

45

187.    Plaintiff Russo and Florida Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

188.    Plaintiff Russo and Florida Class Members submitted their vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each class member by failing to repair the Hood Defect under the vehicle's warranty within a reasonable period of time as described herein.

189.    Plaintiff Russo and Florida Class Members have given Defendant reasonable opportunities to cure the Hood Defect plaguing their respective vehicles, but Defendant has failed to repair the vehicles' Hood Defect within a reasonable period of time.

190.    As a result of said nonconformities, Plaintiff Russo and Florida Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

191.    Plaintiff Russo and Florida Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Russo and Florida Class Members' acceptance of the Class Vehicles.

192.    As a result of Defendant's breach of express warranties, Plaintiff Russo and Florida Class Vehicle owners have been damaged.

**SIXTH CAUSE OF ACTION**
**Violation of Florida Deceptive and Unfair Trade Practices Act,**
**F.S.A. § 501.201, *et seq.***
**(Plaintiff Russo on behalf of the Florida Class)**

193.    Plaintiffs incorporate by referenced all allegations contained in this Complaint as though fully stated herein.

194.     Plaintiff Russo and Florida Class Members are each an "interested party or person" and "consumer" as defined by F.S.A. 501.203(6) and (7) respectively.

195.     At all relevant times, Defendant has engaged in "Trade" and "Commerce" as defined by F.S.A. 501.203(8) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Florida, directly or indirectly affecting Florida citizens though that trade and commerce.

196.     The allegations set forth herein constitute false, misleading, unlawful or deceptive trade practice under F.S.A. 501.201, et seq.

197.     By failing to disclose and concealing the Hood Defect from Plaintiff Russo and Florida Class Members, Defendant violated the Florida Deceptive and Unfair Trade Practices Act, as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

198.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

199.     Defendant knew that the Class Vehicles suffered from the Hood Defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

200.     Defendant was under a duty to Plaintiff Russo and the Florida Class Members to disclose the defective nature of the Class Vehicles because:

a.     Defendant was in a superior position to know the true state of facts about the Hood Defect contained in the Class Vehicles;

b.    Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use;

c.    Plaintiff Russo and the Florida Class Members could not reasonably have been expected to learn or discover that their vehicles have the Hood Defect until after they purchased the Class Vehicles; and,

d.    Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and the Hood Defect.

201.    The facts concealed or not disclosed by Defendant to Plaintiff Russo and Florida Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

202.    Plaintiff Russo and the Florida Class relied on Defendant to disclose material information it knew, such as the Hood Defect in the Class Vehicles, and not to induce them into a transaction into which they would not have entered had the Defendant disclosed this information.

203.    By failing to disclose the Hood Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

204.    Plaintiff Russo and the other Florida Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Hood Defect, which is the reasonable and objective consumer expectation for vehicles.

205.    As a result of Defendant's misconduct, Plaintiff Russo and Florida Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Hood Defect.

206.    Plaintiff Russo has provided adequate notice to Defendant.

## SEVENTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### Pursuant to 810 Ill. Comp. Stat. Ann. 5/2-314
### (Plaintiff Damocles on behalf of the Illinois Class)

207.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

208.    Defendant is a merchant with respect to motor vehicles.

209.    The Damocles Vehicle and Illinois Class Vehicles were each subject to implied warranties of merchantability, as defined in 810 Ill. Comp. Stat. Ann. 5/2-314, running from the Defendant to the Plaintiff Damocles and Illinois Class Vehicle owners.

210.    An implied warranty that the Damocles Vehicle and Class Vehicles were merchantable arose by operation of law as part of the purchase or lease of the subject vehicles.

211.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein, and thus were not in merchantable condition when Plaintiff Damocles and the Illinois Class Members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purpose for which such vehicles are used.  Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from the Hood Defect which can make driving unreasonably dangerous.

212.    Plaintiff Damocles and Illinois Class Members used their Class Vehicles for the ordinary purpose that consumer automobiles are used — to transport passengers and belongings reliably, comfortably, and safely for personal, family, or household purposes.

213.    Despite Plaintiff Damocles and Illinois Class Members' ordinary and expected use of their vehicles, the Class Vehicles did not adhere to minimal consumer expectations, were not of

49

fair and average quality, and would not pass without objection in the consumer automotive industry at the time of sale.

214.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

### EIGHTH CAUSE OF ACTION
**Breach of Express Warranty Pursuant - 810 Ill. Comp. Stat. Ann. 5/2-313**
**(Plaintiff Damocles on behalf of the Illinois Class)**

215.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

216.    In connection with the sale or lease of the Class Vehicles to Plaintiffs and Class Members, Defendant provided Plaintiffs and Class Members with a New Vehicle Limited Warranty, under which it agreed to repair defective parts for the five year or 60,000 mile period following the date of the original retail delivery or date of first use.

217.    Plaintiff Damocles and Illinois Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

218.    Plaintiff Damocles and Illinois Class Members submitted their vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each class member by failing to repair the Hood Defect under the vehicle's warranty within a reasonable period of time as described herein.

219.    Plaintiff Damocles and Illinois Class Members have given Defendant reasonable opportunities to cure the Hood Defect plaguing their respective vehicles, but Defendant has failed to repair the vehicles' Hood Defect within a reasonable period of time.

220. As a result of said nonconformities, Plaintiff Damocles and Illinois Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

221. Plaintiff Damocles and Illinois Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Damocles and Illinois Class Members' acceptance of the Class Vehicles.

222. As a result of Defendant's breach of express warranties, Plaintiff Damocles and Illinois Class Vehicle owners have been damaged.

## NINTH CAUSE OF ACTION
### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*
### (Plaintiff Damocles on behalf of the Illinois Class)

223. Plaintiffs incorporate by referenced all allegations contained in this Complaint as though fully stated herein.

224. Plaintiff Damocles and Illinois Class Members are each "consumers" as defined by 815 ILCS 505/1(e).

225. At all relevant times, Defendant has engaged in "trade" and "commerce" as defined by 815 ILCS 505/1(f) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Illinois, directly or indirectly affecting Illinois citizens through that trade and commerce.

226. The allegations set forth herein constitute false, misleading, unlawful or deceptive trade practice under 815 ILCS 505, et seq.

227. By failing to disclose and concealing the Hood Defect from Plaintiff Damocles and Illinois Class Members, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act as it represented that the Class Vehicles had characteristics and benefits that they do

not have; represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another; and advertised the Class Vehicles with the intent not to sell them as advertised.

228. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

229. Defendant knew that the Class Vehicles suffered from the Hood Defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

230. Defendant was under a duty to Plaintiff Damocles and the Illinois Class Members to disclose the defective nature of the Class Vehicles because:

a. Defendant was in a superior position to know the true state of facts about the Hood Defect contained in the Class Vehicles;

b. Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use;

c. Plaintiff Damocles and the Illinois Class Members could not reasonably have been expected to learn or discover that their vehicles have the Hood Defect until after they purchased the Class Vehicles; and,

d. Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and the Hood Defect.

231. The facts concealed or not disclosed by Defendant to Plaintiff Damocles and Illinois Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

52

232. Plaintiff Damocles and the Illinois Class relied on Defendant to disclose material information it knew, such as the Hood Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

233. By failing to disclose the Hood Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

234. Plaintiff Damocles and the Illinois Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Hood Defect, which is the reasonable and objective consumer expectation for vehicles.

235. As a result of Defendant's misconduct, Plaintiff Damocles and Illinois Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement, and are worth less money because of the Hood Defect.

236. Plaintiff Damocles has provided adequate notice to Defendant.

**TENTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**Pursuant to Minn. Stat. § 336.2-314, *et seq.***
**(Plaintiff Haller on behalf of the Minnesota Class)**

237. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

238. Defendant is a merchant with respect to motor vehicles.

239. The Haller Vehicle and Minnesota Class Vehicles were each subject to implied warranties of merchantability, as defined in Minn. Stat. § 336.2-314, et seq., running from the Defendant to the Plaintiff Haller and Minnesota Class Vehicle owners.

240. An implied warranty that the Haller Vehicle and Class Vehicles were merchantable arose by operation of law as part of the purchase or lease of the subject vehicles.

53

241. Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein, and thus were not in merchantable condition when Plaintiff Haller, and the Minnesota Class Members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purpose for which such vehicles are used. Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from the Hood Defect which can make driving unreasonably dangerous.

242. Plaintiff Haller and Minnesota Class Members used their Class Vehicles for the ordinary purpose that consumer automobiles are used — to transport passengers and belongings reliably, comfortably, and safely for personal, family, or household purposes.

243. Despite Plaintiff Haller and Minnesota Class Members' ordinary and expected use of their vehicles, the Class Vehicles did not adhere to minimal consumer expectations, were not of fair and average quality, and would not pass without objection in the consumer automotive industry at the time of sale.

244. As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

### ELEVENTH CAUSE OF ACTION
### Breach of Express Warranty Pursuant to Minn. Stat. § 336.2-313
### (Plaintiff Haller on behalf of the Minnesota Class)

245. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

246. In connection with the sale or lease of the Class Vehicles to Plaintiffs and Class Members, Defendant provided Plaintiffs and Class Members with a New Vehicle Limited

54

Warranty, under which it agreed to repair defective parts for the five year or 60,000 mile period following the date of the original retail delivery or date of first use.

247.    Plaintiff Haller and Minnesota Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

248.    Plaintiff Haller and Minnesota Class Members submitted their vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each class member by failing to repair the Hood Defect under the vehicle's warranty within a reasonable period of time as described herein.

249.    Plaintiff Haller and Minnesota Class Members have given Defendant reasonable opportunities to cure the Hood Defect plaguing their respective vehicles, but Defendant has failed to repair the vehicles' Hood Defect within a reasonable period of time.

250.    As a result of these nonconformities, Plaintiff Haller and Minnesota Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

251.    Plaintiff Haller and Minnesota Class Members could not reasonably have discovered these nonconformities with the Class Vehicles prior to Plaintiff Haller and Minnesota Class Members' acceptance of the Class Vehicles.

252.    As a result of Defendant's breach of express warranties, Plaintiff Haller and Minnesota Class Vehicle owners have been damaged.

55

**TWELFTH CAUSE OF ACTION**
**Violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68**
**(Plaintiff Haller on behalf of the Minnesota Class)**

253.    Plaintiffs incorporate by referenced all allegations contained in this Complaint as though fully stated herein.

254.    Plaintiff Haller and Minnesota Class Members are each "persons" as defined by Minn. Stat. § 325F.68(3).

255.    The Haller and Class Vehicles are each "merchandise" as defined by Minn. Stat. § 325F.68(2).

256.    At all relevant times, Defendant has advertised, sold, leased and/or distributed merchandise, including the Class vehicles, in the United States, including Minnesota, directly or indirectly affecting Minnesota citizens though that trade and commerce.

257.    The allegations set forth herein constitute fraud, misrepresentation, and deceptive trade practice under Minn. Stat. § 325F.69.

258.    By failing to disclose and concealing the Hood Defect from Plaintiff Haller and Minnesota Class Members, Defendant violated the Minnesota Consumer Fraud Act as it represented that the Class Vehicles had characteristics and benefits that they do not have; represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another; and advertised the Class Vehicles with the intent not to sell them as advertised.

259.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

260. Defendant knew that the Class Vehicles suffered from the Hood Defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

261. Defendant was under a duty to Plaintiff Haller and the Minnesota Class Members to disclose the defective nature of the Class Vehicles because:

    a.    Defendant was in a superior position to know the true state of facts about the Hood Defect contained in the Class Vehicles;

    b.    Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use;

    c.    Plaintiff Haller and the Minnesota Class Members could not reasonably have been expected to learn or discover that their vehicles have the Hood Defect until after they purchased the Class Vehicles; and,

    d.    Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and the Hood Defect.

262. The facts concealed or not disclosed by Defendant to Plaintiff Haller and Minnesota Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

263. Plaintiff Haller and the Minnesota Class relied on Defendant to disclose material information it knew, such as the Hood Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

264. By failing to disclose the Hood Defect, Defendant knowingly and intentionally concealed material facts, and breached its duty not to do so.

265.    Plaintiff Haller and the other Minnesota Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Hood Defect which is the reasonable and objective consumer expectation for vehicles.

266.    As a result of Defendant's misconduct, Plaintiff Haller and Minnesota Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective, and require repairs or replacement, and are worth less money because of the Hood Defect.

267.    Plaintiff Haller has provided adequate notice to Defendant.

**THIRTEENTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**Pursuant to N.Y. U.C.C. § 2-314**
**(Plaintiff Halliday on behalf of the New York Class)**

268.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

269.    Defendant is a merchant with respect to motor vehicles.

270.    The Halliday Vehicle and New York Class Vehicles were each subject to implied warranties of merchantability, as defined in N.Y. U.C.C. § 2-314, running from the Defendant to the Plaintiff Halliday and New York Class Vehicle owners.

271.    An implied warranty that the Halliday Vehicle and Class Vehicles were merchantable arose by operation of law as part of the purchase or lease of the subject vehicles.

272.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein, and thus were not in merchantable condition when Plaintiff Halliday and the New York Class Members purchased or leased the Class Vehicles or at any time thereafter, and the Class Vehicles are unfit for the ordinary purpose for which such vehicles are used.  Specifically, the Class Vehicles were and are not fit for their ordinary purpose

58

of providing reasonably reliable and safe transportation because the Class Vehicles suffer from the Hood Defect which can make driving unreasonably dangerous.

273.    Plaintiff Halliday and New York Class Members used their Class Vehicles for the ordinary purpose that consumer automobiles are used — to transport passengers and belongings reliably, comfortably, and safely for personal, family, or household purposes.

274.    Despite Plaintiff Halliday and New York Class Members' ordinary and expected use of their vehicles, the Class Vehicles did not adhere to minimal consumer expectations, were not of fair and average quality, and would not pass without objection in the consumer automotive industry at the time of sale.

275.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

**FOURTEENTH CAUSE OF ACTION**
**Breach of Express Warranty Pursuant to N.Y. UCC § 2-313**
**(Plaintiff Halliday on behalf of the New York Class)**

276.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

277.    In connection with the sale or lease of the Class Vehicles to Plaintiffs and Class Members, Defendant provided Plaintiffs and Class Members with a New Vehicle Limited Warranty, under which it agreed to repair defective parts for the five year or 60,000 mile period following the date of the original retail delivery or date of first use.

278.    Plaintiff Halliday and New York Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

59

279.    Plaintiff Halliday and New York Class Members submitted their vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each class member by failing to repair the Hood Defect under the vehicle's warranty within a reasonable period of time as described herein.

280.    Plaintiff Halliday and New York Class Members have given Defendant reasonable opportunities to cure the Hood Defect plaguing their respective vehicles, but Defendant has failed to repair the vehicles' Hood Defect within a reasonable period of time.

281.    As a result of these nonconformities, Plaintiff Halliday and New York Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

282.    Plaintiff Halliday and New York Class Members could not reasonably have discovered these nonconformities with the Class Vehicles prior to Plaintiff Halliday and New York Class Members' acceptance of the Class Vehicles.

283.    As a result of Defendant's breach of express warranties, Plaintiff Halliday and New York Class Vehicle owners have been damaged.

**FIFTEENTH CAUSE OF ACTION**
**Violation of N.Y. Gen. Bus. Law § 349**
**(Plaintiff Halliday on behalf of the New York Class)**

284.    Plaintiffs incorporate by referenced all allegations contained in this Complaint as though fully stated herein.

285.    Plaintiff Halliday and New York Class Members are each "persons" under N.Y. Gen. Bus. Law § 349(g).

286.    Defendant is a "person," "firm," "corporation" or "association" under N.Y. Gen. Bus. Law § 349(g).

60

287.     The allegations set forth herein constitute false, misleading, unlawful or deceptive trade practice under N.Y. Gen. Bus. Law § 349, et seq.

288.     By failing to disclose and concealing the Hood Defect from Plaintiff Halliday and New York Class Members, Defendant violated the N.Y. Gen. Bus. Law § 349, et seq., as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

289.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

290.     Defendant knew that the Class Vehicles suffered from the Hood Defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

291.     Defendant was under a duty to Plaintiff Halliday and the New York Class Members to disclose the defective nature of the Class Vehicles because:

a.     Defendant was in a superior position to know the true state of facts about the Hood Defect contained in the Class Vehicles;

b.     Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use;

c.     Plaintiff Halliday and the New York Class Members could not reasonably have been expected to learn or discover that their vehicles have the Hood Defect until after they purchased the Class Vehicles; and,

d.     Defendant made partial disclosures about the quality of the Class Vehicles without

61

revealing the defective nature of the Class Vehicles and the Hood Defect.

292.	The facts concealed or not disclosed by Defendant to Plaintiff Halliday and New York Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

293.	Plaintiff Halliday and the New York Class relied on Defendant to disclose material information it knew, such as the Hood Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

294.	By failing to disclose the Hood Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

295.	Plaintiff Halliday and the other New York Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Hood Defect, which is the reasonable and objective consumer expectation for vehicles.

296.	As a result of Defendant's misconduct, Plaintiff Halliday and New York Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective, and require repairs, or replacement; and are worth less money because of the Hood Defect.

297.	Plaintiff Halliday has provided adequate notice to Defendant.

**SIXTEENTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**Pursuant to Tex. Bus. & Com. Code § 2.314**
**(Plaintiff Jantz on behalf of the Texas Class)**

298.	Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

299.	Defendant is a merchant with respect to motor vehicles.

300. The Jantz Vehicle and Texas Class Vehicles were each subject to implied warranties of merchantability, as defined in Tex. Bus. & Com. Code § 2.314, running from the Defendant to the Plaintiff Jantz and Texas Class Vehicle owners.

301. An implied warranty that the Jantz Vehicle and Class Vehicles were merchantable arose by operation of law as part of the purchase or lease of the subject vehicles.

302. Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein, and thus were not in merchantable condition when Plaintiff Jantz and the Texas Class Members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purpose for which such vehicles are used. Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from the Hood Defect which can make driving unreasonably dangerous.

303. Plaintiff Jantz and Texas Class Members used their Class Vehicles for the ordinary purpose that consumer automobiles are used — to transport passengers and belongings reliably, comfortably, and safely for personal, family, or household purposes.

304. Despite Plaintiff Jantz and Texas Class Members' ordinary and expected use of their vehicles, the Class Vehicles did not adhere to minimal consumer expectations, were not of fair and average quality, and would not pass without objection in the consumer automotive industry at the time of sale.

305. As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

63

<u>SEVENTEENTH CAUSE OF ACTION</u>
**Breach of Express Warranty Pursuant to Tex. Bus. & Com. Code Ann. § 2.313**
**(Plaintiff Jantz on behalf of the Texas Class)**

306.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

307.     In connection with the sale or lease of the Class Vehicles to Plaintiffs and Class Members, Defendant provided Plaintiffs and Class Members with a New Vehicle Limited Warranty, under which it agreed to repair defective parts for the five year or 60,000 mile period following the date of the original retail delivery or date of first use.

308.     Plaintiff Jantz and Texas Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

309.     Plaintiff Jantz and Texas Class Members submitted their vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each class member by failing to repair the Hood Defect under the vehicle's warranty within a reasonable period of time as described herein.

310.     Plaintiff Jantz and Texas Class Members have given Defendant reasonable opportunities to cure the Hood Defect plaguing their respective vehicles, but Defendant has failed to repair the vehicles' Hood Defect within a reasonable period of time.

311.     As a result of these nonconformities, Plaintiff Jantz and Texas Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

312.     Plaintiff Jantz and Texas Class Members could not reasonably have discovered these nonconformities with the Class Vehicles prior to Plaintiff Jantz and Texas Class Members' acceptance of the Class Vehicles.

64

313.   As a result of Defendant's breach of express warranties, Plaintiff Jantz and Texas Class Vehicle owners have been damaged.

**EIGHTEENTH CAUSE OF ACTION**
**Violation of the Texas Deceptive Practices Act**
**Tex. Bus. & Com. Code § 17.41, *et seq.***
**(Plaintiff Jantz on behalf of the Texas Class)**

314.   Plaintiffs incorporate by referenced all allegations contained in this Complaint as though fully stated herein.

315.   Plaintiff Jantz and Texas Class Members are each "consumers" under Tex. Bus. & Com. Code § 17.45(4) because they sought or acquired their vehicle by purchase.

316.   The Jantz Vehicle and the Texas Class Vehicles are "goods" under Tex. Bus. & Com. Code § 17.45(1) because they are tangible chattel that were purchased or leased for use.

317.   Defendant is a "person" under Tex. Bus. & Com. Code § 17.45(3) because it is a corporation.

318.   At all relevant times, Defendant has engaged in "Trade" and "Commerce" as defined by Tex. Bus. & Com. Code § 17.45(6) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

319.   The allegations set forth herein constitute false, misleading, unlawful, or deceptive trade practice under Texas's Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, et seq.

320.   By failing to disclose and concealing the Hood Defect from Plaintiff Jantz and Texas Class Members, Defendant violated the Texas Deceptive Trade Practices Act, as it represented that the Class Vehicles had characteristics and benefits that they do not have,

represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

321.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

322.    Defendant knew that the Class Vehicles suffered from the Hood Defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

323.    Defendant was under a duty to Plaintiff Jantz and the Texas Class Members to disclose the defective nature of the Class Vehicles because:

a.    Defendant was in a superior position to know the true state of facts about the Hood Defect contained in the Class Vehicles;

b.    Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use;

c.    Plaintiff Jantz and the Texas Class Members could not reasonably have been expected to learn or discover that their vehicles have the Hood Defect until after they purchased the Class Vehicles; and,

d.    Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and the Hood Defect.

324.    The facts concealed or not disclosed by Defendant to Plaintiff Russo and Texas Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

325.    Plaintiff Jantz and the Texas Class relied on Defendant to disclose material information it knew, such as the Hood Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

326.    By failing to disclose the Hood Defect, Defendant knowingly and intentionally concealed material facts, and breached its duty not to do so.

327.    Moreover, Defendant's intentional concealment of and failure to disclose the Hood Defect constitutes an "unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.45(5) because, to the detriment of Plaintiff Jantz and the Texas Class, that conduct took advantage of Plaintiff and Class Members' lack of knowledge, ability, and experience to a grossly unfair degree.  That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiff Jantz and the Texas Class.

328.    Plaintiff Jantz and the other Texas Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Hood Defect, which is the reasonable and objective consumer expectation for vehicles.

329.    In addition, Defendant is also liable under Tex. Bus. & Com. Code § 17.50(a) because Defendant's breach of the implied warranty of merchantability set forth above was a producing cause of economic damages sustained by Plaintiff Jantz and the Texas Class Members.

330.    As a result of Defendant's misconduct, Plaintiff Jantz and Texas Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement, and are worth less money because of the Hood Defect.

331.    Plaintiff Jantz has provided adequate notice to Defendant.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, prays for judgment against Defendant as follows:

a. An order certifying the proposed Class, designating Plaintiffs as named representatives of the Classes, and designating the undersigned as Class Counsel;

b. An order awarding Plaintiffs and class members their actual damages, incidental and consequential damages, punitive and treble damages, statutory damages and/or other form of monetary relief provided by law;

c. An order awarding Plaintiffs and the Class restitution, disgorgement, or other equitable relief as the Court deems proper;

d. Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e. A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

f. Reasonable attorney's fees and costs;

g. Pre-judgment and post-judgment interest, as provided by law;

h. Plaintiffs demands that Defendant repair all Class Vehicles; and

i. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: June 1, 2022

Respectfully submitted,

By:   */s/ Susan S. Lafferty*

Susan S. Lafferty, CPA, Esq.
Lafferty Law Firm, Inc.
1321 Murfreesboro Pike, Suite 521
P.O. Box 292977
Nashville, TN 37229
Telephone: (615) 878-1926
Facsimile: (615) 472-7852

*Of Counsel to:*

LEMBERG LAW, L.L.C.
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424

*Attorneys for Plaintiffs*